UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTONIO TERRELL CHRISTIAN                    CIVIL ACTION

VERSUS                                       NO. 23-1241

LOWE'S COMPANIES, INC.,                      MAGISTRATE JUDGE
ET AL.                                       EVA J. DOSSIER

## <u>ORDER AND REASONS</u>

Before the Court, on consent of the parties under the authority of 28 U.S.C. §
636(c), is a Motion for Summary Judgment (Rec. Doc. 29) filed by Defendant Lowe's
Home Centers, LLC (hereinafter "Lowe's"). Plaintiff, Antonio Terrell Christian,
alleges claims for race discrimination in violation of Title VII of the Civil Rights Act
of 1964 as codified in 42 U.S.C. §§ 2000e et seq. ("Title VII") and in violation of
Louisiana Employment Discrimination Law, La. R. S. 23:332 ("LEDL"); hostile work
environment pursuant to 42 U.S.C. § 2000e; constructive termination; denial of equal
protection under the law in violation of La. Const. art. 3; claims under Louisiana Civil
Code articles 2315, 2316, 2317, and 2320; and intentional failure to supervise Lowe's
management. Lowe's seeks summary judgment on each claim.  Mr. Christian filed an
opposition to the motion.[1] Lowe's filed a reply.[2] The motion was submitted on the
briefs.

---

[1] Rec. Docs. 32, 36.
[2] Rec. Doc. 38.

1

I.   **Factual Background**

A.  **Mr. Christian's History at Lowe's**

In 2018, Lowe's hired Mr. Christian, an African-American male who had previously worked for the company, for the position of Specialty Assistant Store Manager at the Ruston store.[3]  Lowe's promoted him to a Store Manager position for the Marrero, Louisiana store in November 2019.[4]  Tim Flavin, the Regional Vice President; Richard Moss, the District Manager for the Ruston store, and Emmanuel Fitch, the District Manager for the Marrero store, all approved the promotion.[5]  The promotion came with a substantial pay increase.[6]

By April 2021, Darrin Funches replaced Mr. Fitch as the District Manager for the Marrero store.[7]  Mr. Funches asked Mr. Christian to consider moving to the position of store manager for the Covington, Louisiana store.[8]  The Covington store, which Mr. Christian described as the "head store," was one of the biggest volume stores in the district.[9]  Although it would be a promotion, Mr. Christian initially said no to the move.[10]

---

[3] Rec. Doc. 29-1, p. 3.  Page numbers refer to those designated by the CM/ECF filing system.
[4] Rec. Doc. 29-1, p. 16, 24.
[5] Rec. Doc. 29-1, p., 16-17.
[6] Rec. Doc. 29-1, p. 18.
[7] Rec. Doc. 29-1, p. 24-25.
[8] Rec. Doc. 29-1, p. 25.
[9] Rec. Doc. 29-1, p. 19.
[10] Rec. Doc. 29-1, p. 46.

Mr. Christian explained that he was reluctant to move to the Covington store because it would be "very hard to staff."[11]  Mr. Christian believed that the relative affluence of the area meant that he would "usually . . . have to go on the –either the outskirts or things like that to try and find employees for that area."[12]  Mr. Christian had previously helped at the store such that he had firsthand experience with the staffing issues.[13]  Mr. Funches and Shawn Arcenaux, a District Human Resources Manager, visited Mr. Christian to encourage him to take the job.[14]  They discussed his concerns about staffing and stated that they would provide "whatever support we can give."[15]  Mr. Christian eventually agreed.[16]  The promotion came with a pay increase of approximately $10,000.[17]  Mr. Christian continued working at the Covington store until he resigned in May 2022.[18]

### B.  The Walk-Through of the Marrero Store

In April 2021, Mr. Christian was transitioning from the Marrero store to the Covington store. During this time, he was "technically [at] both stores because Marrero" had not yet acquired a new store manager.[19]  Mr. Christian had recently returned to work after taking a leave of absence in March 2021 because of COVID.[20]

---

[11] Rec. Doc. 29-1, p. 46.
[12] Rec. Doc. 29-1, p. 26.
[13] Rec. Doc. 29-1, p. 47.
[14] Rec. Doc. 291, p. 49.
[15] Rec. Doc. 29-1, p. 49.
[16] Rec. Doc. 49-1, p. 50.
[17] Rec. Doc. 29-1, p. 51.
[18] Rec. Doc. 29-2, p. 16).
[19] Rec. Doc. 29-1, p. 163.
[20] Rec. Doc. 29-1, p. 163.

Ultimately, a store walk was scheduled for April 2021 for the Marrero store.[21] The purpose of the store walk was to evaluate store standards and offer feedback on store conditions.[22]   Mr. Christian reported that the smaller Marrero store was "small volume, so it was pretty much in shape" at the time of the walk.[23]

The store walk included regional and divisional participants, including Tim Flavin, Regional Vice President.[24] Mr. Flavin had approved Mr. Christian's two promotions,[25] and Mr. Christian reports that he won Store Manager of the Year while under Mr. Flavin's supervision.[26] Mr. Flavin's comments during the store walk form much of the basis for Mr. Christian's lawsuit.

As recalled by Mr. Christian, Mr. Flavin, who is "a very tall guy," came across as "overpowering, belittling, flip mouth, say whatever he want[s], and that's just okay."[27]   Mr. Flavin made several critical comments relative to the effect that the store's poor locker utilization would have on store income.[28]   Specifically, Mr. Flavin referred to, "all this damn money we're paying you. . . All this money I just paid you. This is - - like, this is freaking ridiculous about locker utilization . . . I know you haven't been here the past week or so, but where is [another employee who

---

[21] Rec. Doc. Doc. 29-1, p. 165.
[22] Rec. Doc. 29-6, ¶ 5.
[23] Rec. Doc. 29-1, p. 165.
[24] *Id.*
[25] Rec. Doc. 29-2, pp. 26, 48.
[26] Rec. Doc. 29-2, 170-72, 255, 273.
[27] Rec. Doc. 29-1, p. 167.
[28] Rec. Doc. 29-2, pp. 166-68.

participated in the walk]?"[29]  He commented, "You guys are shooting yourself in the foot with this one."[30] When another employee tried to explain that there was a "glitch" in the locker system, Mr. Flavin replied, "Show me.  I don't believe it.  Show me."[31]

Mr. Christian believed it was "very rude and demeaning" for Mr. Flavin to comment on Mr. Christian's pay in the presence of others.[32]  Mr. Christian testified that Mr. Flavin did not make any racial statements in the store walk through, but that Mr. Flavin targeted African Americans with his criticism.[33]  Mr. Christian recalled one or two other instances in which Mr. Flavin was disrespectful, but he admitted that Mr. Flavin did not make any racial statements during those interactions.[34]  Mr. Christian testified that Mr. Flavin was unpopular with all employees: "Truth be told, nobody liked Tim Flavin."[35]

Lowe's Associate Relations department received an anonymous ethics tipline complaint about the store walk.[36]  The resulting investigation included an interview of Mr. Christian.  Mr. Christian testified that he did not disclose that Mr. Flavin had been inappropriate or unprofessional because he feared losing his job.[37]   Mr.

---

[29] Rec. Doc. 29-2, pp. 167-68.  Locker utilization refers to a system in which Lowe's had invested to facilitate instore pickup of items ordered online.  Rec. Doc. 29-2, pp. 41-45, 168.
[30] Rec. Doc. 29-2, p. 179.
[31] Rec. Doc. 29-2, p. 23.
[32] Rec. Doc. 29-2, p. 172.
[33] Rec. Doc. 29-2, p. 172.
[34] Rec. Doc. 29-2, pp. 169-171, 251.
[35] Rec. Doc. 29-2, p. 173; *id.* at 172.
[36] Rec. Doc. 29-2, pp. 181-183.
[37] Rec. Doc. 29-2, p. 184.  Mr. Christian had one or two other interactions with Mr. Flavin outside of the April 20, 2021, divisional walk that Mr. Christian felt were

Christian reported that Mr. Flavin was very direct and stern, but that he was not disrespectful.[38]

### C. Short-Staffing at the Covington Store

In approximately December 2021 or January 2022, Joshua Mortenson replaced Mr. Funches as District Manager for the Covington store.[39] Shortly after Mr. Mortensen took over as the district manager, he evaluated all his store managers, including Mr. Christian.[40] The highest rating that Mr. Mortensen gave any of his store managers was a "meets expectations" rating, which Mr. Christian received.[41] Because he was performing duties in a prior district during a transition period, Mr. Mortensen did not focus fully on the new district until February 2022.[42]  Mr. Christian reports that he began having issues with Mr. Mortensen around that time.[43]

In February 2022, Mr. Christian reported to Mr. Mortensen and Victoria McGee, Area Human Resources Business Partner, that his store was "drastically" short on staffing because it had recently lost two assistant managers.[44] Mr. Christian

---

"disrespectful," but he admits Mr. Flavin never made any racial comments.  Rec. Doc. 29-2, pp. 31-32.
[38] *Id.*
[39] Rec. Doc. 29-2, pp. 53-54.
[40] Rec. Doc. 29-5, ¶ 7; Rec. Doc. 29-6, ¶ 16.
[41] *Id.*
[42] Rec. Doc. 29-6, ¶ 3.
[43] Rec. Doc. 29-2, p. 59.
[44] Rec. Doc. 29-2, p. 59.

reported that they replied, "as a leader you have to figure out how to make it happen."[45]

On February 28, 2022, Mr. Christian sent an email to Mr. Mortenson and Ms. McGee asking for help for the Covington store because the new assistant manager would not start for another three weeks.[46] Less than two hours later, Mr. Mortenson emailed other store managers, cc'ing Mr. Christian and asking them to assist Mr. Christian as his store was currently short staffed.[47]  The email stated:

> Team, I have an ask [I'd] like you all to come together on and figure out how we can assist before I direct a particular store to provide support. Antonio is in a position where he is down to 2 ASMs.  He will have a 3rd starting in a couple weeks and is currently trying to staff up.  Sunshine has agreed to lend an ASM in a couple of days this week but I need some additional assistance to help support Antonio in this time of need.
>
> I'd like you all to work together to help Antonio at this time.  If you can, please partner with him tomorrow to see how you can help at this time. If you all cannot determine how we can help him temporarily, I'll get involved, but I'd rather you all connect with him and discuss how you could lend an ASM based off of his needs.  I'll connect with Antonio tomorrow to see what we've come up with and if I need to help coordinate.
>
> I want to thank you all in advance as I know you will each find a way to help a peer in need.  Antonio, I'll reach out tomorrow and discuss what we've come up with.[48]

In response to Mr. Mortenson's email, Mr. Christian received assistance from another store manager.[49] Mr. Christian does not allege that Mr. Mortensen nor Ms. McGee

---

[45] Rec. Doc. 29-2, p. 60.
[46] Rec. Doc. 29-3, pp. 13.
[47] *Id.* at 14.
[48] Rec. Doc. 29-3 at 15.
[49] Rec. Doc. 29-2, pp. 13-14.

ever made any comment which he perceived to be discriminatory based on his race. Rather, Mr. Christian alleges that Mr. Mortensen was more supportive of other store managers in his district.[50]

Mr. Christian was out of the workplace for approximately three weeks in April 2022 for vacation and medical leave.[51] He returned to the Covington store on May 2, 2022.[52] Upon his return, Mr. Christian discovered there were several pallets in the store full of merchandise that needed to be unloaded and put away.[53] On the evening of May 2, 2022, Mr. Christian submitted an application for a position with Home Depot.[54]

Mr. Christian spoke with Mr. Mortenson about the state of the Covington store on May 3, 2022.[55] Mr. Mortenson explained that the unloaded pallet situation arose starting on April 28, 2022, but Mr. Christian believed that these conditions began arising as soon as he went out on leave.[56] On May 4 or 5, 2022, Mr. Christian emailed notice of his resignation to Mr. Mortenson.[57] Mr. Mortensen accepted Mr. Christian's resignation and made it effective immediately because he had learned that Mr.

---

[50] Rec. Doc. 36-1, pp. 3; Pl. Depo 62-63, 60, 145.
[51] Rec. Doc. 29-1, pp. 50; Rec. Doc. 29-2, pp. 1.
[52] Rec. Doc. 29-1, pp. 50; Rec. Doc. 29-2, pp. 1.
[53] Rec. Doc. 29-2, pp. 1-2.
[54] *Id.* at 15; Rec. Doc. 29-3, pp. 22-23.
[55] Rec. Doc. 29-2, pp. 2-4, Rec. Doc. 29-4, pp. 4.
[56] Rec. Doc. 29-2, pp. 2-5; Rec. Doc. 29-4, pp. 4.
[57] Rec. Doc. 29-2, pp. 4, 6-7, 9-10, 16.

Christian was communicating with Home Depot, a competitor.[58] Mr. Christian began
working for Home Depot before May 30, 2022.[59]

During his employment with Lowe's, Mr. Christian was never demoted,
suspended, or disciplined.[60] Mr. Christian was given a "meets expectations"
performance rating by Mr. Mortensen, which was the highest rating Mr. Mortensen
assigned any of his store managers in 2022.[61] Mr. Mortensen had no plans to
terminate Mr. Christian and felt his performance would not warrant termination.[62]

## II.   Standard of Law

Summary judgment is appropriate if a movant shows "that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law."[63] A fact is "material" when its resolution might affect the case's outcome under
governing law.[64] "A genuine dispute of material fact exists 'if the evidence is such
that a reasonable jury could return a verdict for the nonmoving party.'"[65] Courts
resolve factual controversies in favor of the nonmoving party. An actual controversy,
however, exists only "when both parties have submitted evidence of contradictory
facts."[66]

---

[58] Rec. Doc. 29-6, ¶¶ 13-14.
[59] Rec. Doc. 29-2, pp. 37.
[60] Rec. Doc. 29-2, pp. 29.
[61] Rec. Doc. 29-5 ¶7, Rec. Doc. 29-6 ¶ 16.
[62] Rec. Doc. 29-6 ¶ 13.
[63] Fed. R. Civ. P. 56(a).
[64] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[65] *S. Ins. Co. v. Affiliated FM Ins. Co.,* 830 F.3d 337, 343 (5th Cir. 2016) (quoting
*Anderson,* 477 U.S. at 248).
[66] *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quotation
omitted).

Summary judgment is proper when, after adequate time for discovery, "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[67] "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[68] Once the moving party shows "that there is an absence of evidence to support the non-moving party's cause," the nonmoving party must come forward with "specific facts" showing a genuine factual issue for trial.[69] "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[70] If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact of required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.[71]

Further, summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated in the affidavit.[72] Statements made by

---

[67] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[68] *Id.* at 322-23.

[69] *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)(citing *Celotex*, 477 U.S. 317 at 325).

[70] *Id.*

[71] Fed. R. Civ. P. 56(e)(2).

[72] Fed. R. Civ. P. 56(c)(4).

affiants without personal knowledge are not capable of being presented in an admissible form at trial.[73]

A nonmoving party's mere subjective belief fails to establish that there is a genuine issue as to any material fact.[74] While the court may not evaluate evidence on a motion for summary judgment, it may determine the "caliber or quality" of evidence as part of its determination whether sufficient evidence exists for the factfinder to find for the nonmoving party.[75] When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[76] "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate."[77]

## III.   Analysis

### A.   Evidentiary Dispute

Lowe's seeks to have the affidavits submitted by Mr. Christian in support of his opposition stricken from the record because they are not based on personal knowledge, contain hearsay, and contain legal conclusions.[78]

---

[73] *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018)(holding that statements in affidavits that amount to legal conclusions or statements made without personal knowledge are not capable of being presented in a form that would admissible in evidence); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x. 364, 366 (5th Cir. 2015) (holding affidavit based on witness's belief rather than personal knowledge is insufficient summary judgment evidence).

[74] *Chambers v. Sears Roebuck & Co.*, 428 F. App'x. 400, 419 n.54 (5th Cir. 2011); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007).

[75] *Anderson*, 477 U.S. at 254.

[76] *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

[77] *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

[78] Rec. Doc. 38, pp. 1, 7.

Rule 56 requires a party asserting that a fact is genuinely disputed to support that assertion by citing to particular parts of materials in the record.[79] "Under this rule, a court's decision to grant or deny a motion for summary judgment is 'largely controlled by what the parties presented;' if the record contains evidence that might show a dispute of material fact, a party must specifically identify it."[80] The party opposing summary judgment is "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[81]

## 1. Statement of Facts

Mr. Christian's six-page "Statement of Facts" contains very few record citations.  And the citations it does contain generally are misplaced or immaterial to summary judgment. An analysis of every statement of fact for which Mr. Christian provided a citation confirms that they do not suffice to defeat summary judgment. Mr. Christian's six statements of fact that contain record citations are:

(1) "Flavin made a racial slur to Christian inferring he was shooting himself in the foot."[82]

The cited affidavit appears to reference the store walkthrough when Mr. Flavin referred to Mr. Christian shooting himself in the foot with respect to low locker utilization rates.  The affiant's characterization of this comment as a "racial slur" is

---

[79] Fed. R. Civ. P. 56(c)(1).
[80] *Rodrigue v. PTS Mgmt. Grp., LLC*, 550 F. Supp.3d 376, 389 (W.D. La. 2021) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).
[81] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[82] Rec. Doc. 36-1, p. 2 (citing Affidavit of Shawn K. Arceneaux, Rec. Doc. 36-2).

not evidence that a racial slur was, in fact, used.  To the contrary, Mr. Christian testified that he was not subject to racial slurs.

> (2) "Arceneaux submitted a complaint to Associate Relations on behalf of an associate who wished to remain anonymous" relative to the walkthrough by Mr. Flavin.  "The complaint was unsubstantiated after Miele spoke to Clint Cannon, Tim Flavin's Human Relations subordinate."[83]

Even taking as true the facts alleged relative to the anonymous complaint, they do not defeat summary judgment.

> (3) "Despite promises by Mortensen he would work with him to remedy the lack of staffing at Lowe's Covington Store, both [Mr. Mortensen and Ms. McGee] continued to give *lip service* to his requests." (emphasis Mr. Christian's).[84]

The cited email reflects that Mr. Mortensen took prompt, active steps to assist Mr. Christian with the staffing issue. The cited portion of Mr. Christian's EEOC complaint relates to the period when he briefly returned to work after being out with COVID.  Mr. Christian alleges that on May 2 or 3 he spoke with Mr. Mortensen relative to staffing, and Mr. Mortensen stated he would speak with Mr. Flavin relative to potential regional support and then "get back" to Mr. Christian.[85]  Given that Mr. Christian resigned within 24-48 hours and before hearing back from Mr. Mortensen, even construing the facts in the light most favorable to Mr. Christian, this short delay does not create a genuine issue of material fact.

---

[83] Rec. Doc. 36-1, p. 2 (citing Arceneaux Affidavit, Rec. Doc. 36-2).

[84] Rec. Doc. 36-1, p. 3 (citing Rec. Doc. 29-3, p. 13 and Rec. Doc. 29-4, p. 1-6).

[85] Rec. Doc. 29-4, p. 5; *see also* Rec. Doc. 36-1, p. 4 (discussing this same citation).

    (4) Mr. Christian "successfully met Lowe's goal to pass inventory and moved the Covington store from last in the district to seventh out of eleven stores."[86]

Taken as true, this fact does not defeat summary judgment.  The record indicates that Lowe's never disciplined Mr. Christian and did not intend to terminate him (for performance or any other reason).  To the contrary, the record indicates that Lowe's repeatedly promoted Mr. Christian.

    (5) Team members at Lowe's "discussed Christian's medical condition without his authorization."[87]

Taken as true, this fact does not defeat summary judgment because it bears no discernible connection to Mr. Christian's race discrimination claims.

    (6) After Mr. Christian resigned, two white store managers and ten associates were assigned to assist Mr. Christian's replacement, who was also white.[88]

The cited authority is a copy of Mr. Christian's EEOC complaint.  These vague allegations do not describe the process by which staff were assigned to assist Mr. Christian's replacement in any detail.[89]  As set forth below, even taking these allegations as true, Mr. Christian has not met his burden of identifying an appropriate comparator.

---

[86] Rec. Doc. 36-1, p. 3 (citing Rec. Doc. 29-4, p. 2-3).
[87] Rec. Doc. 36-1, p. 4 (citing Rec. Doc. 29-4, p. 3).
[88] Rec. Doc. 36-1, p. 5-6.
[89] The record indicates that managers frequently worked to find staff or to borrow staff from other stores in order to receive assistance. Rec. Doc. 29-9, p. 1.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[90] Thus, while defense counsel (understandably) thoroughly briefed every potential factual issue that arose during Mr. Christian's deposition,[91] the undersigned will constrain the analysis to those facts discussed by Mr. Christian's opposition for which he has provided appropriate record support.

### 2. Affidavits

Rule 56 does not require consideration of most of the third-party affidavits provided by Mr. Christian because he does not cite them in his statement of facts. Nevertheless, for clarity, the undersigned will address their admissibility at the summary judgment stage.

Mr. Christian submitted four third-party affidavits, each of which appears to reflect repetition of information provided by Mr. Christian to the affiant, rather than personal knowledge. As a threshold matter, the affidavits are not competent summary judgment evidence because they do not reflect personal knowledge and rely largely on legal conclusions. At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be "*capable* of being 'presented

---

[90] *Ragas,* 136 F.3d at 458 (citing S*kotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.1992)).

[91] To be clear, the undersigned has not identified any factual issue (whether or not briefed by Mr. Christian) that would preclude summary judgment.

in a form that would be admissible in evidence.'"[92] Neither legal conclusions nor statements made without personal knowledge are capable of being so presented.[93]

### a. Jairo "Will" Eakin

The affidavit of Mr. Eakin assumes that Mr. Christian's requests to Mr. Mortensen did not result in any assistance.[94] But there is no indication that Mr. Eakin had any firsthand knowledge of those conversations, the contents of which are set forth in Mr. Christian's testimony (which is generally accepted as true at this stage). Similarly, Mr. Eakin's belief, without explanation, that it was "common knowledge Mr. Christian would resign if he did not receive support" does not provide any insight as to what Mr. Mortensen understood relative to Mr. Christian's subjective intent.[95] Thus, the facts alleged in this affidavit are generally irrelevant.

### b. Shawn Arceneaux

According to Mr. Christian's Complaint, Ms. Arceneaux was terminated from Lowe's in December 2021.[96] Thus, it does not appear she would have any firsthand knowledge of Mr. Mortensen and Mr. Christian's interactions. In any event, her affidavit is comprised largely of unsubstantiated conclusions and statements of opinion relative to facts of which she lacks personal knowledge. For example, she alleges that the alleged statement that Mr. Christian was shooting himself in the foot

---

[92] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2))
[93] *See* Fed. R. Evid. 602, 701, 702. *D'Onofrio*, 888 F.3d at 208.
[94] Rec. Doc. 36-5, ¶ 3.
[95] Rec. Doc. 36-5, ¶ 5.
[96] Rec. Doc. 1-1, ¶ 20.

was a racial slur.[97]  The remainder of the affidavit does not set forth any issue of material fact. Her allegation that Mr. Christian was a valuable employee, for example, is consistent with Lowe's own practice in promoting him and demonstrating for purposes of summary judgment that it had never disciplined him and did not intend to terminate him.

### c. *Elnora Swayne*

The affidavit of Elnora Swayne alleges, "Although Mr. Mortensen promised to send additional employees, none were sent until after Mr. Christian resigned . . . ."[98] But Mr. Christian never testified that Mr. Mortensen promised to send additional employees then breached that promise. And the affidavit itself reflects that the affiant observed Mr. Christian speaking with Mr. Mortensen but does not indicate she had any firsthand knowledge of those conversations.[99] Mr. Christian's own testimony confirms that Ms. Swayne was not privy to these conversations.[100] Similarly, the allegation that a lack of support personnel "created a hostile work environment" reflects a legal conclusion rather than any firsthand knowledge.[101] Most of the affidavit contains either speculation not based on firsthand knowledge or legal conclusions and is, thus, inadmissible.[102]

---

[97] While perhaps some tenuous connection could be drawn between military service and this adage, which is not at issue in this lawsuit, there is no support for proposition that the adage has a racial connotation.

[98] Rec. Doc. 36-3, ¶ 7.

[99] Rec. Doc. 36-3, ¶ 16.

[100] Rec. Doc. 38-1, p. 4.

[101] Rec. Doc. 36-3, ¶ 8.

[102] *See* Rec. Doc. 36-3, ¶ 7 (lack of personal knowledge); ¶ 8 (legal conclusion); ¶ 9 (generalized conclusion without factual detail); ¶ 10 (same); ¶ 11 (legal conclusion); ¶

### d. Melissa Anderson

Ms. Anderson's affidavit also does not support a genuine issue of material fact. Certain statements (e.g., that the Covington store experienced staffing difficulties[103]) are not in dispute at this stage. Others are simply irrelevant (e.g., that the affiant had to report to work at 4:30 a.m. one morning[104]). And the remainder generally consists of speculation and legal conclusions.[105]

## IV.   Timeliness and Exhaustion

### A. Mr. Christian's discrimination claim based on the walkthrough is time-barred.

Mr. Christian brought disparate treatment and hostile work environment claims based on the walkthrough with Mr. Flavin that took place on or around April 20, 2021.[106] The disparate treatment claim is untimely. Mr. Christian did not contact the EEOC until June 25, 2022—more than 300 days after the walkthrough occurred. And, while his opposition memorandum argues that the continuing violation doctrine applies, that doctrine does not extent to disparate treatment claims.[107] The Supreme Court has clarified that each discrete adverse employment action, including a failure to promote, "constitutes a separate actionable unlawful employment practice" and

---

13 (lack of personal knowledge, legal conclusion); ¶ 14 (generalized conclusion without factual details, legal conclusion); ¶ 15 (irrelevant); ¶ 16 (lack of personal knowledge); ¶ 17 (legal conclusion); ¶ 18 (legal conclusion).

[103]*E.g.,* Rec. Doc. 36-4, ¶ 3.

[104] *E.g.,* Rec. Doc. 36-4, ¶ 6.

[105] *E.g.,* Rec. Doc. 36-4, ¶ 7, 8, 913.

[106] Rec. Doc. 1-1, ¶¶ 8-9.

[107]*See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), *as revised* (Mar. 13, 2017) ("Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are.").

"starts a new clock for filing charges alleging that act."[108] Therefore, plaintiffs must "file a charge within ... 300 days of the date of the act or lose the ability to recover for it."[109] Thus, Mr. Christian's disparate treatment claim relative to the walkthrough is untimely.

Whether the walkthrough can be considered in Mr. Christian's hostile work environment claim rests on the application of the continuing violation doctrine. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."[110] Thus, under the continuing violation doctrine, "A charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."[111] Thus, a court may consider "the entire scope of the hostile work environment claim," including behavior alleged outside the 180–day window, "so long as any act contributing to that hostile environment takes place within the statutory time period."[112]

The burden is on the plaintiff to demonstrate the application of the continuing violation doctrine.

> This "continuing violation" doctrine is limited in three ways. First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. *Id.* at 118,

---

[108] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). *See also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004)

[109] *Morgan*, 536 U.S. at 114. *See also Smith v. AT&T Mobility Servs., L.L.C.,* No. 21-20366, 2022 WL 1551838, at *2 (5th Cir. May 17, 2022).

[110] *Morgan*, 536 U.S. at 115.

[111] *Id.* at 122.

[112] *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Morgan*, 536 U.S. at 105).

120, 122 S.Ct. 2061. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. *Id.* at 118, 122 S.Ct. 2061. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.'" *Id.* at 120, 122 S.Ct. 2061 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234).[113]

Mr. Christian invokes the continuing violation doctrine,[114] but he sets forth no facts that support its application. Thus, the walkthrough cannot be considered as part of his hostile work environment claim. In the alternative, however, and as set forth below, Mr. Christian's claims fail on the merits even if evidence of the walkthrough is considered.

### B. Mr. Christian essentially admits that he did not exhaust his administrative remedies relative to his constructive termination claim.

Lowe's argues that Mr. Christian failed to exhaust his constructive discharge claim. And Lowe's correctly points out that Mr. Christian's lengthy EEOC complaint, including attachments, does not include any reference to an alleged constructive discharge. Mr. Christian's opposition does not address this argument. Thus, he concedes that he failed to exhaust his administrative remedies relative to constructive discharge.

---

[113] *Stewart*, 586 F.3d at 328.
[114] Rec. Doc. 36, p. 2.

## V.    Race Discrimination Claims under Title VII and the LEDL.

Mr. Christian alleges he was discriminated against based on his race in violation of Title VII and Louisiana Employment Discrimination Law, La. R. S. 23:332.[115] "Claims of racial discrimination in employment pursuant to the LEDL are governed by the same analysis as that employed for such claims under Title VII."[116]

Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[117] To determine if employment discrimination occurred, courts rely on the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*.[118]

The plaintiff has the initial burden to prove a prima facie case of racial discrimination by establishing that he: (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate

---

[115] La. Rev. Stat. Ann. § 23:332(A)(1). The Louisiana Employment Discrimination Law (LEDL) provides "[i]t shall be unlawful discrimination in employment for an employer to…discharge any individuals, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, national origin, or natural, protective, or cultural hairstyle."
[116] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x. 322, 327 (5th Cir. 2008).
[117] 42 U.S.C. § 2000e-2(a).
[118] 411 U.S. 792, 802 (1973).

treatment, that other similarly situated employees were treated more favorably.[119] If the plaintiff succeeds in establishing a prima facie case of racial discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action.[120] Finally, if the employer provides a legitimate, non-discriminatory reason for the employment action, then the plaintiff must prove, "by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination."[121]

There is no dispute that Mr. Christian is a member of a protected class and qualified for the store manager position. But Lowe's maintains that summary judgment is warranted because Mr. Christian was not subject to any adverse employment action and, alternatively, that similarly situated employees outside of the protected class were treated more favorably.

### A.    Mr. Christian was not subject to an adverse employment action, including relative to any term or condition of employment.

The summary judgment evidence, including Mr. Christian's own testimony, confirms that Mr. Christian was not subject to an adverse employment action. While Mr. Christian was a Store Manager for Lowe's, he was never subject to any discipline.[122] He was not subject to any suspensions, demotions, or pay cuts.[123] Mr.

---

[119] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir.2004)
[120] *McDonnell*, 411 U.S. at 802; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).
[121] *Byers*, 209 F.3d at 425.
[122] Rec. Doc. 29-2, pp. 29.
[123] Rec. Doc. 29-12, paragraph 52.

Christian received the highest performance rating for any store manager under Mr. Mortensen in 2022.[124] Mr. Christian's manager stated that his performance would not warrant a termination, and Mr. Christian's manager had no plans to terminate him.[125] To the contrary, Lowe's repeatedly promoted him.

The sole incidents about which Mr. Christian complains in his opposition to summary judgment are the walkthrough and the lack of staffing support.  During the walkthrough, he was subject to language he considered disrespectful relative to how much he was paid and "shooting [himself] in the foot" relative to locker utilization. This isolated instance of disrespectful language, even assuming it occurred, did not result in any effect on the compensation, terms, conditions, or privileges of Mr. Christian's employment, deprive him of employment opportunities, or otherwise adversely affect his status as an employee.[126]

Whether chronically under-staffing a store presents an adverse employment action may present a nuanced question on certain hypothetical facts.[127] But not on this record.  The summary judgment evidence confirms that the Covington store was short-staffed before, during, and after Mr. Christian's employment there. Mr. Christian does not contend that the store was short-staffed based on race, but rather, he believes, because of the difficulty in hiring employees in more affluent areas. Mr. Christian instead suggests that Mr. Mortensen offered more assistance to other

---

[124] Rec. Doc. 29-5, ¶ 7; Rec. Doc. 29-6, ¶ 16).
[125] Rec. Doc. 29-6, ¶ 13.
[126] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).
[127] *See Hamilton v. Dallas Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023)

managers than he did to Mr. Christian. Even assuming a low level of staffing support could be an adverse employment action, the record does not support this conclusion that Mr. Christian experienced an unusual lack of support.

Mr. Mortensen averred, consistent with his email to Mr. Christian and the other managers, that he expects store managers to arrange for staffing and coordinate amongst themselves if short-term needs arise.[128] When Mr. Christian requested help, however, Mr. Mortensen acted promptly, including by sending a broad email to area managers (1) asking them to help Mr. Christian; (2) advising that he would intervene if they did not do so; and (3) assuring Mr. Christian that Mr. Mortensen would keep him advised of the outcome of the email.[129] And, while Mr. Christian complains that in May 2022 he requested assistance and did not receive an immediate response, he resigned within 24-72 hours while waiting for Mr. Mortenson to get back to him on potential resources. Thus, Mr. Christian has not put forth any evidence establishing that he suffered an adverse employment action because of his race.

**B. Mr. Christian has not provided evidence that similarly situated employees were treated more favorably.**

Summary judgment is also appropriate because Mr. Christian has not identified any evidence that similarly situated employees were treated more favorably than him.  In February 2022, Mr. Christian had discussions with Mr. Mortenson and Ms. McGee asking for staffing help for his store and he sent an email

---

[128] Rec. Doc. 29-3, p.15; Rec. Doc. 29-6, ¶ 8.
[129] Rec. Doc. 29-3, p. 15.

to Mr. Mortenson and Ms. McGee in connection with those discussions.[130] Within hours of receiving the email, Mr. Mortenson emailed his other store managers asking them to assist Mr. Christian given the Covington staffing needs.[131] Mr. Christian was contacted by another store manager who was able to provide assistance.[132] Mr. Christian did not send any other emails seeking help with staffing before he resigned.[133] Mr. Mortensen rated Mr. Christian's performance as high or higher than any of his other store managers in 2022.[134]

The only putative evidence that Mr. Christian has identified to support his contention that similarly situated managers were treated more favorably is the allegation that Jacob King, a white store manager from Mr. Mortensen's previous district, replaced Mr. Christian and received assistance from two other white store managers.[135]  Mr. Christian does not allege, much less show through competent evidence, however, that Mr. King requested assistance from Mr. Mortensen in a manner similar to Mr. Christian and yet received a different result.  And, as explained above, Mr. Christian resigned before Mr. Mortensen could act on his most recent request for assistance.  Further, the summary judgment evidence, including Mr. Christian's own testimony, indicates that it is the Store Manager (i.e., Mr. Christian or Mr. King) rather than the District Manager (i.e., Mr. Mortensen) who

---

[130] Rec. Doc. 29-3, p. 13.
[131] Rec. Doc. 29-3, p. 14.
[132] Rec. Doc. 29-2, p. 13-14.
[133] Rec. Doc. 29-2, p. 12.
[134] Rec. Doc. 29-6, ¶ 16.
[135] Rec. Doc. 36-1, p. 5-6.

has primary responsibility for store staffing.[136]  There is thus no competent evidence showing that Lowe's treated a similarly situated store manager more favorably than Mr. Christian.

## VI.    Hostile Work Environment Claim

In addition to protecting employees from racial discrimination in the workplace, Title VII also makes it unlawful for employers to require people "to work in a discriminatorily hostile or abusive environment."[137] "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[138] "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated."[139]

A plaintiff making a hostile work environment claim based on race discrimination must show: "(1) [h]e belongs to a protected group; (2) [h]e was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[140] In order to determine if an

---

[136] *E.g.*, Rec. Doc. 39-2, p. 112-13; Rec. Doc. 29-6, ¶¶ 8-12.
[137] *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 432 (5th Cir.2022) (citing G*ardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir.2019)).
[138] *Morgan*, 536 U.S. at 117.
[139] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).
[140] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

environment is "hostile" or "abusive," courts must consider the totality of the circumstances and may look to a number of factors including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[141] The court should also consider the effect on the employee's psychological well-being.[142] "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."[143]

Here, there is no evidence showing Mr. Christian was subject to harassment based on his race. Mr. Christian alleges that Tim Flavin, Joshua Mortenson, and Victoria McGee discriminated against him based on his race and created a hostile work environment.[144] While Mr. Christian alleges that his interactions with Mr. Flavin were disrespectful—a position he took only after leaving Lowe's[145], he admits that Mr. Flavin never made any racial comments.[146] Mr. Christian alleges that Mr. Flavin's comment of "You're shooting yourself in the foot with this one" was race based, but does not explain how that statement is related to race.[147] Likewise, Mr.

---

[141] *Harris*, 510 U.S. at 17.
[142] *Id.*
[143] *Id.*
[144] Rec. Doc. 29-2, p. 38, 41-42, 45-46.
[145] Rec. Doc. 23-3, p. 43.
[146] Rec.  Doc. 29-2, p. 31-32.
[147] Rec. Doc. 29-2, p. 31-32.

Christian admits that Mr. Mortenson and Ms. McGee never made any comments about Mr. Christian's race.[148]

Mr. Christian's employment at Lowe's appears to have been, for the most part, both uneventful and successful.  Further, as discussed above, Mr. Christian was never disciplined, demoted, or subject to a negative pay determination while he worked at Lowes.[149] He was never given a lower performance rating or in a position where his termination was contemplated by his supervisors.[150] There is no evidence that Mr. Christian was subject to any harassment by Lowe's management, let alone that any alleged harassment affected a term, condition, or privilege of Mr. Christian's employment. Mr. Christian has not established evidence of severe and pervasive conduct that a reasonable person would find hostile or abusive. Therefore, his hostile work environment claim fails and Lowe's is entitled to summary judgment on that claim as a matter of law.

## VII.    Plaintiff's Constructive Discharge Claim

Mr. Christian alleges he was constructively terminated as a result of the hostile and discriminatory work environment created by Lowe's. A constructive discharge under Title VII occurs "when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."[151] "In examining a claim of constructive discharge, the court objectively considers a variety

---

[148] Rec. Doc. 29-2, p. 45, 47.
[149] Rec. Doc. 29-2, p. 29.
[150] Rec. Doc. 26-6, ¶ 13, 16.
[151] *Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp.2d 570, 596 (N.D. Miss. 2011)

of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not."[152] The focus of the inquiry is not whether the employee felt compelled to resign, but "whether a reasonable employee in his situation would have felt so compelled."[153] The Fifth Circuit also considers whether the employee attempted resolution of his or her concerns before choosing to resign in determining whether certain working conditions would have compelled a reasonable employee to resign.[154]

Further, constructive discharge claims require a higher degree of harassment than is required to establish a hostile environment claim.[155] The Fifth Circuit has repeatedly held that where a plaintiff fails to establish a hostile work environment claim, his or her claim for constructive discharge necessarily fails as well.[156] Because

---

[152] *Id.*

[153] *Id.*

[154] *Haley v. All. Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (holding that a reasonable employee in plaintiff's position would have attempted resolution of workplace conditions before choosing to quit two weeks after returning to work after medical leave).

[155] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

[156] *Landgraf v. USI Film Products*, 968 F.2d 427, 431 (5th Cir. 1992); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996); *Burrle v. Plaquemines Par. Gov't*, Civ. No. 12-739, 2013 WL 2286113, at *6 (E.D. La. May 23, 2013), aff'd (Jan. 22, 2014) (holding that because plaintiff could not establish a hostile work environment due to his race, and because a constructive discharge claim requires a greater severity of harassment than the minimum required to prove hostile work environment, plaintiff's constructive discharge claim fails as well).

Mr. Christian's hostile work environment claim fails, he is not able to establish a higher degree of harassment that is required to establish a constructive discharge claim.[157] Therefore, Lowe's is entitled to summary judgment as a matter of law.

## VIII. Equal Protection Claim

Mr. Christian alleges that Lowe's denied him equal protection of the laws on the basis of his race[158] in violation of Article I, Section 3 of the Louisiana Constitution, which provides: "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations."[159] This provision concerns discriminatory laws and does not create a cause of action against a private individual or company.[160] Accordingly, Mr. Christian's claim under Article 1, Section 3 of the Louisiana Constitution fails as a matter of law.

## IX. Louisiana Civil Code (Tort) Claims

In his Complaint, Mr. Christian alleges that he was subject to discrimination in employment because of his race in violation of Louisiana Civil Code articles 2315,

---

[157] Fifth Circuit precedent forecloses Mr. Christian's argument that Lowe's terminated him by making his resignation effective immediately. *See Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 67 n.4 (5th Cir. 1980).

[158] Rec. Doc 1-1, ¶ 53; Rec. Doc. 29-2, p. 41-42.

[159] La. Const. Ann. art. I, § 3.

[160] *Washington v. Louisiana*, 628 F. App'x. 914, 917 (5th Cir. 2015); *Hornsby v. Enter. Transp. Co.*, 987 F. Supp. 512, 515 (M.D. La. 1997); *Alonso v. Administrators of Tulane Educ. Fund*, CV 22-4661, 2023 WL 143320, at *3 (E.D. La. Jan. 10, 2023).

2316, 2317, and 2320[161]. Lowe's argues that Mr. Christian's general tort claims fail as a matter of law because the Civil Code articles are inapplicable to employment discrimination claims under Louisiana law.[162] In response to the motion, Mr. Christian states, "Plaintiff Christian agrees the Louisiana Employees Discrimination Act supersedes claims for violations under state civil code articles."[163] Accordingly, summary judgment is appropriate on these claims.

## X.   Intentional Failure to Supervise

Mr. Christian alleges that Lowe's "intentionally failed to properly supervise Lowe's management to prevent the creation of a hostile work environment, disparate treatment, and constructive termination."[164] Louisiana does not recognize an intentional tort for failure to supervise.[165] Louisiana recognizes a claim for negligent failure to supervise,[166] but an employee is barred from bringing such a claim against his employer because the Louisiana Workers' Compensation Act is "the exclusive remedy for work related injuries and illnesses."[167] Mr. Christian's claim for intentional failure to supervise fails as a matter of law.

---

[161] Rec. Doc. 1-1, ¶ 53.
[162] Rec. Doc. 29, p. 3.
[163] Rec. Doc. 23, p. 3.
[164] Rec. Doc. 1-1, paragraph 53; Rec Doc. 36, pp. 2
[165] *Orillion v. Alton Ochsner Med. Found.*, 685 So.2d 329, 332 (La. 1997).
[166] *Matthews v. United Fire & Cas. Ins. Co. Doctor Pipe, Inc.*, 213 So.3d 502, 506 (La. App. 4th Cir. 2017).
[167] *Morris v. Graphic Packaging Int'l, L.L.C.*, 829 F. App'x. 43 (5th Cir. 2020).

**XI.     Conclusion**

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendant, Lowe's Home Centers, LLC's Motion for Summary Judgment (Rec. Doc. 29) is **GRANTED**. Plaintiff Antonio Terrell Christian's claims of race discrimination in violation of Title VII and the LEDL, claims of hostile work environment, claims of constructive termination, claims of denial of equal protection under the law in violation of La. Const. art. 3, claims under Louisiana Civil Code articles 2315, 2316, 2317, and 2320, and claims of intentional failure to supervise Lowe's management are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 1st day of August, 2024.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE

32